Next case, number 21-1542, Green Enterprises, LLC versus Hiscox Syndicates Limited at Lloyd's of London and all. At this time, would counsel for the appellant introduce himself on the record to begin. Good morning, may it please the court. Counsel Jose Andres Collazo on behalf of the defendant. At this time, we would like to ask the court if we could reserve five minutes for rebuttal. If you have 15 altogether, you can reserve four. Four is fine, thank you. This case is about the McCarran-Ferguson Act. By enacting the McCarran-Ferguson Act, Congress established that it is the public policy of the United States that the states retain the power to regulate the business of insurance and all persons engaged therein. Appellees wants to bypass the public policy of Congress and the state laws which it swore to abide with by invoking a treaty that has nothing to do with insurance, that is non-self-executing, and that already provides for Congress and allows Congress to enact laws like the McCarran-Ferguson Act and does not create a private right of action, all at the expense of millions of policyholders and domestic insurers, and most importantly, putting in jeopardy the insurance regulatory scheme of 16 states and Puerto Rico. If the convention, the treaty is self-executing, do you have any argument? In what regard, Your Honor? Well, you said the treaty is not self-executing. Yes. Suppose we would find that it is self-executing, particularly with respect to Article 2, Section 3 of the treaty. If the treaty were self-executing, then yes, Your Honor, it would fall outside the scope of the McCarran-Ferguson Act, yes. So that becomes the pivotal point in your analysis. Correct, Your Honor, yes, correct. And the treaty, including Article 2, Section 3, is non-self-executing in its entirety for two main reasons. First, if one reads the language of Article 2, Section 3 with proper context, with due regard to the treaty's overall structure, its practical implications, and the understanding and intent of the parties ratifying it in a way that it is not inconsistent with the rest of the treaty provision, one has to conclude that the Article 2, Section 3 cannot operate of its own force without the aid of any legislative provision. Well, suppose that, look at Article 2, Section 3, suppose that were a statute. We were looking at a statute passed by Congress. If someone then filed an action in a manner in which parties had made an agreement, wouldn't it be mandatory that the court then compel arbitration? No, Your Honor, because Article 2, Section 3 itself states that the courts of the contracting state shall enforce agreements, but only if they fall within the meaning of this article. So it is only obligatory when the agreement falls within the meaning of this article. And what determines, and because it does not define what is within the meaning of this article, reference to Article 2, Section 1 has to be made, which defines within the meaning of this article, those agreements where the parties agree to subject disputes that involve subject matters capable of settlement by arbitration. Isn't Article 2, Section 1 also mandatory that the contracting state shall recognize an agreement? No, no, it is not, Your Honor. The Supreme Court recently in the case of General Electric Energy established that the contracting states, Congress in this case, the political authority of the United States, has the power and the discretion to determine what are subject matters capable of arbitration. So in that sense, and also it addresses to itself the contracting states and not the courts. Counsel, I know that you cite, I believe, the Second and Fifth Circuits that have ruled in your favor. That was before the Medellin case. Then there's another case from the Ninth Circuit post-Medellin. Why should we not follow the Ninth Circuit approach which follows Medellin case? In other words, why do you think that's inapplicable or it's wrong? First, Your Honor, as we already stated in our brief, the Medellin case did not apply a new doctrine in regards to treaty interpretation to see if the treaty is non-self-executing or self-executing. It just made a recount of the doctrine. But that doctrine has been established since Foster v. Nielsen. It was decided in the 19th century. So the fact that it was the Ninth Circuit's decision was decided after Medellin is really irrelevant. And also with the Ninth Circuit misapplying Medellin because it considered the Article II, Section III's language without context, without due regard to its structure, without referencing the United States interpretation upon ratification of the treaty, particularly the Department of State's understanding of the treaty's nature and the President's understanding of the treaty's nature. So in that sense, we believe that the Ninth Circuit misapplied Medellin because Medellin itself states that while language is important, it is not the only factor that a court has to consider when determining whether a treaty's status under the Constitution. What about there's also the 1982 case from this Court, the Ledy case versus Ceramice? Is that applicable or inapplicable to your argument? Well, it is inapplicable, Your Honor, because in that case, what the Court was applying was the treaty's implementing legislation and not the treaty itself. So in that sense, it is inapplicable. Or I guess you would say maybe inapplicable or distinguishable.  And also, Your Honor, that case also demonstrates or suggests that the treaty is non-self-executing because it states that before a court, a district court in the United States can refer parties to arbitration, it has to look to the implementing legislation first because it has to determine whether the subject matter of the dispute that the parties agreed to arbitrate is commercial. It's commercial and whether it involves citizens of the United States and a foreign citizen from a signatory nation or two citizens of the United States with regards to property located abroad. The treaty does not contain that last language. And also, the treaty applies not only to commercial disputes by its own languages, by its own language, but also to all sorts of legal disputes. So in that sense, by enacting Chapter 2, the implementing legislation, Congress limited the scope of the convention in regards to domestic law. So the court has to look first to the implementing treaty. But why would that render something? Suppose we have a treaty, it's self-executing, and it covers A to Z. Congress then passes a subsequent law that says forget about following the treaty from T to Z. It would still be self-executing from A to S, wouldn't it? No, Your Honor. First, there is no Supreme Court case that establishes that a treaty can contain both self-executing and non-self-executing provisions. Why couldn't it? I mean, the United States should – we shouldn't be telling the United States whether it has to separate out treaties into self-executing and non-executing different treaties. Why can't they do one treaty that has a self-executing part and another part that isn't self-executing? Well, Your Honor, we have to look – we have to think this in terms of an armamentality approach in the sense of and apply basic principles of interpretation. A treaty cannot – a provision of a treaty cannot be non-self-executing. If it's inconsistent with the rest of the treaty's provisions, so – Well, suppose you have a treaty that says section one of this treaty we'll call the self-executing section of the treaty. That's what it says, and it says courts shall and must do the following. Section two, non-self-executing, the Congress of the United States will pass some laws that will do the following. Apply in general principles of treaty and statutory interpretation. That would be the case, but only if the self-executing provision is consistent with the rest of the treaty's non-self-executing. So you agree you can have a treaty that has both self-executing and non-self-executing parts. You just don't think this one does that? Your Honor, we believe that treaties cannot have both provisions and also that in this case – But then I didn't understand your answer to my prior question. The treaty that has section one, self-executing, following command to courts. Section two, non-self-executing, Congress shall hopefully do the following. Well, it is self-executing. That provision that is self-executing is self-executing only if it's consistent with those treaties, with those provisions that are non-self-executing and in a way that the non-self-executing nature of the other treaty provision does not overwrite the treaties that are construed as self-executing. May I finish? You can finish your sentence, yes. That will be all, Your Honor. Thank you for your time. Thank you. You have four minutes, I believe. Sure. Thank you. At this time, a counsel for the appellees will introduce himself on the record to begin. Good morning, Your Honors. Greg Mast on behalf of appellees. My clients respectfully ask the court to affirm for three independent and each dispositive reasons. The first is the New York Convention is in and of itself a treaty between nations, recognized and bound by the power of the executive branch ratified by the Senate and not an act of Congress within the meaning of McCarran-Ferguson. Second, McCarran-Ferguson is not intended to apply to international foreign affairs or treaties. And third, I think the court focused most of its attention on, the treaty itself is self-executing, at least as to Article II, Section 3. What if it isn't self-executing? Do you lose? I'm sorry, Your Honor? What if it is not self-executing? If it's not self-executing, the inquiry focuses back on points one and two, which is that it's not an act of Congress and it's not within the McCarran-Ferguson Act, which incidentally is the fundamental holding of the Fifth Circuit in safety national as well as the Fourth Circuit in ESAB. It's only the Ninth Circuit which has went to the question of and reached the question of whether the treaty itself is self-executing. So in this case, we don't even, from what you're arguing, we don't even need to reach prong three, whether it's self-executing or not, if we find this is international affairs and it's not covered by McCarran-Ferguson, correct? Yes, Your Honor. It is that simple? It's a narrow ruling. It could in that way be a very narrow ruling. And that is certainly the ruling that came out of both the Fifth and Fourth Circuits. Now, there were concurrences, particularly in the Fifth Circuit, which went further and did talk about self-executing. But the actual decision of the majority of the court was that the treaty did not address the question of whether it was self-executing. And I think the first point really gets to that, which is a treaty is, again, made by the executive, and it's facially not an act of Congress to trigger McCarran-Ferguson. We go back to Foster, the U.S. Supreme Court decision in Foster, which talks about a treaty being in its nature a contract between nations. It's not itself a legislative act. I understood the argument from the other side. I don't think they're hinging their wagon to claim that treaties are act of Congresses. I think they're saying that even though treaties are not act of Congresses, if they're not self-executing, then it's not the treaty that's actually operative on the court below. It's the act of Congress. And if it's the act of Congress, McCarran-Ferguson applies. And I can't say it any better than your sister court, the Fifth Circuit, said in Safety National, quote, Implementing legislation that does not conflict with or override a treaty does not replace or displace that treaty. A treaty remains an international agreement or contract negotiated by the executive branch and ratified by the Senate, not Congress. The fact that a treaty is implemented by Congress does not mean that it ceases to be a treaty and becomes an act of Congress, end quote. So the central question here is, what is the conflict? Is the conflict the Convention Act, or is it the New York Convention itself? And in reality... But put yourself in the position of a U.S. District Court judge, and you've been asked to compel arbitration, and you want to say, What authority tells me to compel arbitration? If you look at the treaty and you can't find anything in the treaty that compels you to enforce arbitration, then it doesn't matter that a treaty is not an act of Congress. If you have to instead look at an act of Congress to find out that's what makes me compel arbitration here, then don't you back into McCarran-Ferguson? If you have to get to the Convention Act. The problem for petitioners here is that Section 2, Article 3 specifies what the Court shall do. And so the Court is being directed not by the Convention Act, but by the Convention itself, which is what the Fifth Circuit and the Fourth Circuit both held in reviewing that same question. The second point is that McCarran-Ferguson was never designed to apply to international treaties. And the Supreme Court has obviously said very broadly that when we construe domestic legislation, we try to avoid conflicts with international treaties. That's the Sky Reefer case. But without saying that McCarran-Ferguson does not apply internationally, the Supreme Court's come pretty darn close in the Garamendi case by explaining that McCarran-Ferguson was, quote, directed to applied preemption by domestic commerce legislation, end quote. So it's the commerce legislation that McCarran-Ferguson's designed to regulate, the commerce power of the legislature, not the international affairs power, which the Fourth Circuit and ESAB found to be particularly persuasive. Now, I'll concede Garamendi is not a traditional act of Congress case. It was an executive order case. But the ruling isn't so narrow. The court's holding there really focused on this notion of what was the point of McCarran-Ferguson and what was the legislative choice that underrode and drove that decision-making authority. And there, again, is the power to enact legislation that was particularly critical, the commerce legislation. Can I ask you about McCarran-Ferguson, what we make of that, how it works? I can understand how it applies on its terms to preexisting statutes and other statutes that existed prior to enactment of McCarran-Ferguson. But with respect to acts of Congress that were passed after McCarran-Ferguson, is McCarran-Ferguson anything more than a rule of construction? In the context of where there's a conflict of the treaty, no, it's not, because you have Beard v. Greed, the U.S. Supreme Court decision in 1998, which dealt with this question of what happens when you have a subsequently ratified treaty or statute. And the court said there, if it conflicts with the other, that is, the statute conflicts with the treaty, if they conflict, what you look at is which was ratified or enacted last. And so if that's the tiebreaker, if that's how far the court's analysis goes, the Supreme Court's already answered the question for us. In other words, the treaty you're controlling. Yes, Your Honor. Not McCarran. Correct. So the final point, and I think the one that – I'm sorry, just one follow-up on that. If the convention – the treaty is not – if it's not self-executing, Congress could still pass a law that does what your brother counsel says McCarran-Ferguson, in fact, does. If that were the case, yes. Yeah. And I take it that's your answer to their GE Power site. I think there's a lot more to say about GE Power. Okay. Why don't you say it? Yeah. So GE Power, I think the first problem with GE Power is that it misses – is that it's applying – it's directed to a different article within the convention. That is, it's directed to Article 2, Section 1, not Section 3. So that creates a fundamental problem. I think it also misses a very important U.N. drafting history, which we can discuss, which was quoted in the Shirk case by the U.S. Supreme Court, outlining what the intent was behind the drafting of the New York Convention, which the U.S. participated in. In that discussion, the Court goes into great length to explain that nations were concerned that the courts of various nations would adopt their own parochial views about what's arbitrable, what's not, and decide – make its own decisions about what's arbitrable, what's not. And so the intent, the entire intent of the New York Convention is to override that basic principle. And finally, that case dealt with something that's completely unrelated. It dealt with the question of when you have a non-party to an agreement, does the convention apply? And the answer there was, well, no, because the convention isn't designed for that. It talks about when you have an agreement between the parties. The gap that existed in GE Power was the gap that exists where you're trying to apply waiver or estoppel, you know, equitable principles to bring a non-party to the treaty obligations vis-a-vis an arbitration agreement to which they were not even a party. So there's a lot of reaching that has to be done if you're going to apply GE Power. Instead, I would suggest the more critical point of GE Power is that we shouldn't cherry-pick the negotiating history from the U.S. legislative history to try and create a rule contrary to the text of the treaty itself. And so that's the real fundamental takeaway from GE Power that I would suggest to the Court is important. But so the third point, that whether McCarran-Ferguson is in and of itself self-executing, we can look at the text, shall couldn't be any clearer. I can't imagine what language we would use other than to say this treaty is self-executing. To say that there is a mandate directly on the courts. Indeed, appellate wrote on their brief at page 10 that a treaty is self-executing if its provisions constitute binding directives on domestic courts, end quote. And there is a binding directive. The only question is whether the actual agreement, if there is an agreement, whether that falls within the New York Convention. Well, that just simply means is there agreement to arbitrate? And is this between nations? There are actually parties to the New York Convention. It doesn't mean that there's a wide discretion to interpret. So why did Congress go to the bother of enacting what it did enact to implement this? You're talking about the implementation in advance of the convention, the Convention Act itself? Yes. I mean, if the self-executing argument is correct, then the convention itself would have been enough for you to prevail in this case.  So I think the U.S. government answered that question for us in an amicus brief, which was filed before the U.S. Supreme Court in Louisiana safety. And there the government explained that the treaty itself was self-executing, but the mere fact that a treaty permits legislation or here allowed legislation doesn't change that dynamic. Instead, what we have is legislation that's being provided to facilitate, to take away the possibility that state courts, for example, that could be deciding these questions of arbitrability in the New York Convention. So one of the main things that was changed in U.S. law between the negotiating of the New York Convention and the signing and ratification of it was to make sure that the federal courts would be the ones that would decide questions of arbitrability and to allow parties to remove cases. Those jurisdictional questions didn't make it more or less self-executing. Instead, it just ensured that there would be consistent application of the laws. It's the fundamental principle, if we go back to the founding of our country, as to why Article III courts exist. One of the principles is to ensure that when we're dealing with international affairs, they're being dealt with by non-elected judges, Article III judges that are appointed for life. So the fact that the president recognized and the legislature adopted those limited changes to ensure consistent application does nothing to change the character of whether the treaty itself, at least in Article II, Section 3, is self-executing. I would also note that one of the other factors that the court looks at, if we get past the text itself and we look at this drafting history, it's not just the way the United States looks at things, but also the way other signatories look at the treaties. And I'd be remiss if I didn't note that Judge Howard explained in his concurrence in the Puerto Rican Voting Rights Cases, Number 4, that after Medellin and after Abbott v. Abbott, we now look to the shared understanding of nations.  That's a 2008 study by the U.N. Convention, which actually found the vast majority of countries treat the New York Convention as self-executing. So it's not just the United States. It's not just the drafting history of the convention itself, but worldwide nations treat this as self-executing. And so if we're to look at that and we're to decide what is the fundamental role and whether the treaty ought to be enforced as written, we have to look at it from an international perspective, one that we would hope other nations would follow our lead. If we start as a nation going down the path of rejecting international treaties that obstruct the courts on how to rule, well, that's going to have a snowball effect. It has the potential for other nations to do the same. And that's one of the main concerns the U.S. Supreme Court has articulated time and time again in making sure that we do and follow our obligations to compel arbitration in the appropriate cases. And we think we have that here. With that, Your Honors, if there aren't any other questions. Let me just ask you a brief question. The fact, let's assume you prevail, this case goes to arbitration. That doesn't automatically mean that your client is entitled to prevail during that arbitration. It's just the forum, right? That is all it is. And there's no indication here that the forum itself would be unfair. I mean, the forum is still Puerto Rico. The forum is still Puerto Rican law. There's nothing fundamentally unfair about the forum. There's been no challenge to the forum. So even in the briefing, there's extensive discussion in one of the sections about Mitsubishi Motors versus Solar and how the court should look at and consider whether it's null and void. Well, again, there's nothing, there's no rights being taken away. This isn't a case where they're losing their Sherman Act rights or antitrust rights to pursue my clients because we're not going to apply U.S. law, we're going to apply the law of Japan. And the arbitration will take place in Puerto Rico? Yes, Your Honor. It's not an issue of like, oh, we've got to get the witnesses to Europe or it's going to cost, it's going to cost probably the same as litigating this in superior court, roughly, I guess. The cost is an interesting question. I don't know necessarily the cost, but no, it would certainly be domesticated locally. But even when it's not locally, the Supreme Court has been very clear that we need to suborn or subjugate our own views of domestic outcomes. So even if the outcome would be different under a foreign nation's law, it doesn't change the fact that the New York Convention ought to be strictly construed and applied aggressively. Thank you. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the appellate would reintroduce himself on the record to begin, he has a four-minute rebuttal. Counsel, before you begin, so I don't cut your four-minute rebuttal with my question, similar to what I asked counsel, the issue here is, will this matter be litigated before a superior court judge or an arbitrator? Again, this is not being litigated in federal court where there would be a jury, so this is not an issue where you're going to lose the jury. So what is the big significance of this getting litigated in Puerto Rico State Court versus an arbitration? Your Honor, first we want to clarify that the arbitration provisional issue doesn't specify where the forum that the arbitration is to be taking place. It doesn't say that. So that is a matter yet to be resolved. And secondly, Your Honor, the cost of going to arbitration to my client are significantly, substantially more than litigating the case in the Puerto Rico Superior Court. Under the provision of the policy, the arbitration provision, my client would have to pay the fees of an arbiter and half of the fees of another arbiter. And also, we have to keep in mind that my client just lost his factory. That is why we are here in the first place. And not only did he lose his revenue stream, he also has to go to arbitration, pay fees, pay legal fees to his attorneys who will represent him in arbitration. And if he were in the Superior Court, they would only have to pay $90 to file the complaint, Your Honor. Plus your fees, I guess. Yes, Your Honor. Okay, but the fact whether it goes to arbitration or not, or if it goes to arbitration doesn't mean your opposing party is automatically going to win. You could prevail in arbitration. But what you're saying, there's an issue about the costs. Yes, Your Honor, yes. Please continue. Yes. Your Honor, also, we want to address a point that was raised by the appellees. The implementing legislation does not merely facilitate and doesn't establish mere procedural mechanisms to aid in the enforcement of the convention. It does much more than that. In Section 202 of the implementing legislation, it establishes the substantive rules of the game. It establishes that the New York Convention is only to apply in the United States only to commercial disputes. That means that notwithstanding the language of Article 2, Section 3, that it says that the courts of a contracting state shall refer to arbitration, under the convention, the district court will have no power to submit to arbitration or to enforce an arbitration argument that deals with non-commercial disputes. So in that case, it does much more. It limits the substantial scope of the treaty. So reference to the implementing legislation is the first thing that the district court will have to do in deciding whether. And, Your Honor, because Article 2, Section 3, the enforcement mechanism, is basically a procedural mechanism in the sense that it is not a private cause of action. It merely allows a court to refer the parties to arbitrate an underlying private cause of action in an extrajudicial forum, but it doesn't create substantial rights in the sense that a tort action would, Your Honor. And lastly, we would like to use the time allotted to us to state that the McCain-Ferguson Act does not apply only to domestic commerce legislation. The statements in Garamendi are contradicted by other Supreme Court cases. For instance, in United States Department of Treasury v. FAFE, the Supreme Court expressly stated that the McCain-Ferguson Act's reverse provision reach is not only in regards to domestic commerce legislation, but to all conflicting federal statutes that do not regulate the business of insurance or do not contain a clear statement rule expressly excluding the act from the McCain-Ferguson Act's reach. Furthermore, Your Honor, in the case of Watson v. Employers' Liability Assurance, the Supreme Court, although in another context, applied the Louisiana law, insurance law, regarding direct actions to a foreign insurer, a British insurer in that case, and it ruled specifically that that did not violate the due process clause of the 14th Amendment, Your Honor. Thank you for your time. Thank you to both counsel. That concludes argument in this case.